Case number 20-2297, Blanche Barber v. Charter, Township of Springfield, et al. Oral argument, 15 minutes for plaintiff, 15 minutes to be shared by the defendants. Ms. Pervin for the appellant. Good morning, your honors. May it please the court, Anne-Marie Paravan appearing on behalf of Appellant Blanche Barber. I'd like to reserve five minutes of rebuttal in this case. Certainly. Can you speak into the microphone? I'm sorry. Pardon me. Thank you. Leaving me 10 minutes to address this honorable panel. In this case, it's a very narrow issue. Do you have the defendants made a final decision such that we can question whether or not there's been an invalid taking under the Fifth Amendment? Not much else has to be discussed here. I see no reason for me to waste the panel's time going through every case, through everything that we briefed. Right now, we are in a position where we have a township and a county who want to take a 200-year-old lake, natural lake, and drain it for what my client believes is an unnecessary public park. But has there been a final decision by the township and county to demolish the dam? Your Honor, in this case, since this is a regulatory taking, and in being a regulatory taking, we are challenging, facially challenging what they're doing. I believe there has been. Both Oakland County, Springfield County have indicated publicly that they are indeed taking this step. Of course, they're not digging yet, but the finality that we look at is that final decision. We think they have. They've collected money. They've received grants. So what constitutes a final decision when a governmental agency is thinking about demolishing a dam? What is the final decision step? To me, the final decision step is that they've gone to the next phase of planning, which So if they're representing, and they have grants, and grants have been issued to them. The grant issue is not in your complaint, correct? These grants have happened after the time of your complaint. That is exactly correct, and that's why we brought up the issue. For purposes of your standing at the time the complaint was filed, we can't consider whether grants were received after the complaint was filed, can we? Well, what we have addressed with respect to that, it is new evidence. It happened since the decision of the district court. That is true. We relied on the Crosby case to state that, and also there is the Harrison case, which is a published decision to state when there was a change. Since the district court made its decision, we do the analysis in terms of now. For standing purposes? Yes. I thought the black letter law was that you have to establish standing at the time of your complaint. So shouldn't we be looking at the things that happened as of the time of your complaint that are included in your complaint as opposed to post-complaint activities? That is true. That is black letter law. I would not disagree with that at all. However, I do think that rightness and standing go hand-in-glove. If I have rightness and standing... One's in the Constitution. Pardon me? One's in the Constitution. Correct. And the other one is sort of a prudential doctrine. And the way I would read the court's reasoning on that is that once there is rightness, rightness gives you standing. That it would be, if we find that this is right in the sense that there has been a final decision. Now, that coupled with the fact that the impact of the decision will be hitting the client so hard, I mean, it's her land, her property, that altogether gives us standing. But how do we know what the impact of removing the dam will be when we don't know that the township, et cetera, are going to, in fact, remove the dam in a particular way? There's only one way to remove the dam. Their goal is to shrink the lake, to drain the lake, to drain the wetlands. So our analysis is, our experts have looked at the implications of that, and we've talked about it in our briefs, the environment, the swamp area, the fact, the riparian rights, which of course is Michigan law. But that's what we're looking at. So those are the impacts, I mean, without a doubt. Our client, I'm sorry. What kind of environmental assessment or environmental impact study have the governmental entities performed? Do we have anything along those lines? Yes, we do. We both looked at, of course, there's the famous rattlesnake. It's their environment that's being touched. Even now, the water has gone down, the lake water has been drained somewhat, and that has caused the snakes to leave their habitat, and they are an endangered species, and to also go out into the town, you know, to go into the city, I mean, excuse me, the town is a very small town, and start biting people. The environment is impacted clearly, so that both sides have actually looked into that. And so there's no question that that will happen. Well, I mean, but is there a study of some kind, an exhibit that we could look at? Well, I guess it's hard to look at those things when this is a motion on the pleadings, and we haven't gotten to discovery, and I guess those sorts of items have not been put in the record yet. Is that your position on this? That is our position, because those are the things that we think that we want to explore in the district court, and we haven't been allowed to do so, put our proofs forward. So really, we don't yet know what the scope of the consequences will be from taking down the dam, or the nature of the damages that your client would suffer. I guess your opposing counsel is going to say, oh, this is speculative at this point, because we don't have enough concrete information, and how would, and that relates to the standing issue, of course, so how would you respond to that? My response to that is the riparian rights that my client has. Her house is right on the, right where the lake ends, there isn't even sand, it's just right there, just feet away from the water. She has Michigan riparian rights to the middle of that water that's out there, so right there, once they drain that water, the bottom lands are hers, and they plan to develop those bottom lands, and that's her land. Well, if it's her land, then isn't the time for her to complain when the township is trying to develop her purported land? Well, that's, the development would be removing the lake waters, and that's what we're And giving her more land, then? Well, the land, it's questionable whether or not it'll be usable. That's a 200-year-old lake plus, so what is usable underneath that is very questionable. What's wrong with saying that this case is not ripe yet? That at some point, she may have claims, but that they haven't ripened? Because our position is, is that the county and the township are moving too quickly. And once they move, we can't undo that. We are talking about historical buildings, buildings that are over 200 years old. Is that her house? I mean, this is a single person? Yes. But there's also the town, the lake is over 200 years old, and it's a natural lake. So how do you put that back? Are these purported injuries able to be remedied at law? In other words, wouldn't a damages award, assuming these things come to pass, wouldn't a damages award later on be a remedy? And so what's the, can't you refile this case later on if anything's come to pass and get a proper remedy from the court? The compensability is possible, but our position is, is that this is non-compensable. That's why we're seeking an injunction. The loss of a historical area. The loss of an environment. And no valid reason for the taking. This has not been put to a vote. There's no reason for a park there. There's no, there's not even enough people to support a park being in that area. Can I ask you, I sort of laid out earlier why I think maybe we shouldn't be considering some of the things you're talking about, but suppose we, it's sort of a free-for-all and we can just consider anything that's out there in the public domain. What is the most concrete evidence that the dam is going down? The most concrete evidence we have is that the county and Springfield have told the public that they are united in approving it and they have accepted money to do so. When was that statement, I mean this has been going on, your case is over two years old. Yes it is. And the dam has not come down yet. March 2021 is when we have a public statement of them saying we're going forward, we have the money. So seven months ago, eight months ago, there was this, but none of that hasn't, hasn't come down, there's no wrecking ball, I mean. No, no wrecking ball, but they are starting to stake the road in front of my client's house to change the way that the traffic flows, preparing for that. So what has to happen before the dam comes down, if they proceed on their course of removing the dam? You say they've appropriated some money? Yes. But have they signed a contract? Yes, they have a contract, a planning contract. They're a county, I think boots on the ground is the next step. They're saying in 2022 they're going to start making changes and so. It seems as though a decision has been made to take the dam down, so we may be beyond the realm of speculation about that, but what I'm gathering is that your client, the county and the city or the township have not acknowledged to your client that her properties, that they're going to do what they're going to do, at least not officially, and they've not acknowledged that your client's property is going to be adversely affected. And really to the contrary, they've denied, I think their legal position is they're denying that your client's property is going to be adversely affected. Is that your understanding of their position? My understanding of their position is they haven't made a final decision, is what they're saying, and we're saying they have. Yes, but I mean obviously they're trending toward a final decision and maybe even have made it but have not revealed it. And in the course of these, whatever they've communicated, are they denying or acknowledging that your client's property could be adversely affected? They're ignoring her property. So it's been that they haven't communicated with your client in that regard, is what you're saying. I am saying that. Yes, I am. And that discovery wasn't even cut when this motion was brought. So I agree with your Honor. I mean, they're acting like she's not there, that everything we're saying is make believe, and they're not going to do this, and we're saying they're going to do it. And I would like to hear that they're not going to do it. Nobody's ever said that, so that's our point. I see your time has expired, so if you want to save your rebuttal time, that'd be fine. I will, thank you. Good morning, may it please the Court, Jeffrey Gersh on behalf of Charter Township of Springfield and Charter Township of Springfield Parks and Recreation. The District Court correctly granted judgment on the pleadings because the facts, as alleged, did not allow for an inference that this claim is ripe, and it did not allow for a finding of standing. They have very significant problems with respect to both ripeness and standings. The Court's questions have touched on a couple of them, but not all of them, and to my mind, not even the most significant ones. Judge Moore, you're right, there has been no final decision. That's number one. But number two, even if you assume that there has been a final decision to remove the dam, they haven't shown that they're going to be harmed by it. Their allegations are essentially twofold, that the property is going to suffer a diminution in value, their property, and number two, the local ecosystem will be affected. Well, first of all, they're both entirely conclusory and speculative, as Judge Edmonds correctly noted. Let me ask you this. It seems unreal to believe you're not going to do this with the account of planning and money being spent. Has your client performed any sort of environmental assessment of the consequences of removing the dam? Do you have any township employees or other resources devoted to assessing that? Yes, Your Honor. I'm not going to be able to give you a very good answer on that. I know that environmental studies have been done. In fact, I think there were seven different proposals that were considered, and the impact on the environment and the surrounding properties were factored in. Those are identified in the briefing. So you do have information about that, and you've paid for studies and that kind of... I think that's correct, Your Honor. Have you shared those studies, those environmental impact studies and information with the public and with the plaintiff in this case? That I don't know, but I assume so, because... Well, wait a minute. It seems like you would have found that out before coming to court here today. Well, I'm focusing my argument on what's in the record and what's been brought forth to the court. My understanding... Well, the problem is it seems like you're sitting on a trove of information, and there's a lot of planning going on regarding the removal of the dam, and that information, I won't say is being concealed, but it's not being revealed, and the plaintiff can't get to that information because you want to throw her case out on the pleadings and not permit any discovery about these things. Well, I think that's not fair, Your Honor. I don't think we've deprived the plaintiff of any information. All the information... Well, you haven't given the information that you say you have regarding the environmental assessments to the extent you've made them. It's what I understand you to be saying. I'm sorry to interrupt you, Your Honor. I don't know. I don't know. I personally haven't, because I don't have any myself. I don't know what the township has given her or what has been done with regard to furthering the plans. I think it's safe to assume that the plans are farther along than they were, but I also have seen nothing to indicate that there is final plans. So you say that this final decision hasn't been made. Is that right? That's my understanding. What is the factors involved in making a final decision, and what is your client's timetable for making a final decision? Well, my client made a recommendation to Mr. Klemtner's client, which is the Oakland County defendants, which are the ones that are doing this, and he might have more information on where it's gone since then because it's his clients that will actually be undertaking this project. But what is your position as to what is the final decision that would make a claim by people like the plaintiff ripe and give the plaintiff standing? So what does she have to wait for to happen? Well, there's a difference, Your Honor, between a final decision to remove the dam on one hand and whether she has a ripe takings claim or standing for a takings claim. Because even if the dam is removed, she does not have a ripe takings claim or standing because the... So when would she have standing to complain, or when would a claim be ripe if she thinks that what the government is planning on doing interferes with her property rights? Well, she doesn't have a takings claim and she doesn't have standing to challenge the dams. It's a hard question to answer. So a takings claim, in your opinion, relies on the government actually taking her property? Her property. So she has to wait, under your theory, for the dam to be demolished before she has a claim? Well, there's a twofold answer. I don't mean to be evasive, Your Honor. She doesn't... The removal of the dam will not be a taking of her property. So that's a... So even if the dam is demolished, she still doesn't have a final decision that causes a takings claim to arise? Yes, correct. There would be a final decision. What I'm saying is even if there's a final decision to remove the dam, even if you assume that's already happened, she doesn't have a ripe takings claim because there's no damage to her that's alleged in the complaint. So what's... Judge Rader was going into the question of damages at law and she responded, well, she wanted an injunction. She wants to stop the demolition of the dam. Right. And you're saying that the complaint that she filed is inadequate to state a claim that would allow for injunctive relief. Correct. So how could she stop, assuming that she wants to do that, how could she stop the demolition of the dam? Because you're saying a takings claim doesn't arise until the dam actually is torn down and the water or the disappearance of the water hurts her property. She, yeah, she doesn't, she can't stop it because the proposed action, it wouldn't be a takings claim. Sounds like your theory of, your argument is that a person can't sue to prevent damage to property and can only sue after the damage has transpired. And I don't expect you to agree with that, but that's what happens when you deny the, you don't provide the information as to what your plans are and when you're going to proceed and what the consequences are. And you say, well, they can't, they don't have a takings claim. They can't do anything. And once, so they can't get any injunctive relief or even know if they're entitled to it. All they can do is sue for damages after the fact. It sounds like what you're saying. No, well, that was a handful. If I remember your premise, Your Honor, it was that if there's, they don't have a takings claim until the property has been damaged and they can't get an injunction to stop action that will damage their property. That's not our position. Our position is their property will not be damaged even according to their own complaint. Well, what if the damage appears to be imminent and you say that no final decision has been made and once the damages occur, all they can do then is sue for damages. Can I ask, I mean, a takings claim is taking the property without just compensation. Correct. So the question is whether there's been injury and if there has been injury, whether the property owner has been justly compensated. Correct, right. And there's been no determination about whether there's been an injury, let alone what compensation, have you denied? Has there been a request for compensation that you've denied? No, no. Well, and here's, and this, I wanna get this in from concrete pipe. This is what the Supreme Court said that I think is germane here because her whole argument of a taking is that her property value will go down. And I would just note that she's one of five to seven adjacent properties. She's the only one that is sued. So none of the other neighbors apparently believe that their property value will go down. But what the Supreme Court said in concrete pipe is, and I'm quoting, our cases have long established that the mere diminution and the value of property, however serious, is insufficient to demonstrate a taking. That's the point I'm trying to make. Her only argument is that the value of her property is going to go down. Number one, it's speculative. And number two, that's not a taking. That's not a taking. Are you saying it's not a taking because the just compensation hasn't been denied? What's not, the diminution in her value wouldn't constitute a taking. And your point, Judge Riedler, I'm sorry. I thought it was Riedler, but then I thought Judge Moore mispronounced it different. No, Judge Moore had it right. I think you had it wrong. You had it wrong. Riedler. Yeah, this is a motion for judgment on the pleadings. Their only allegation is the value of their property will go down. That's number one, speculative. And number two, it doesn't constitute a taking. And if it does happen, if the- Why is, I'm having a little trouble. I get the complaints. Pretty fuzzy. I think we should be calling it ball and twombly here. But what's your second point? Why is there no, I get the point that the allegations of harm here are pretty speculative. But what's the, I'm not quite following that next point. There's no taking because- The quote from Concrete Pipe that the mere diminution in value does not constitute a taking. Diminution in the value of property does not constitute a taking, according to Concrete Pipe. Well, what, because- I mean, I get the part about, I get that someone says the public body's action has reduced the value of their property or their ability to use it or their resale value or something and they seek just compensation. And you're saying, setting aside the just compensation issue, what's the analysis we have to look under to see whether there's a taking? But even if there's a diminution in value, not all diminutions in value count as a taking. There has to be an actual physical taking of their property or another part of the test, I'm, it's escaping me right now, but it's in my brief. Our brief does describe what constitutes a taking. That's a pretty important point. Go ahead. Oh, I'm sorry. Well, they've also alleged a regulatory taking too. Right. Concrete Pipe was decided in 93 and I thought the Supreme Court, sorry about that, has been elaborating on what constitutes a taking. Because your theory would be, as long as it's only a diminution in value, there cannot be a taking at all? Correct. According to that decision. And so you're saying that that 1993 decision has not been changed in any way by the Supreme Court? I'm not aware that it has. I mean, I could be mistaken on that. I don't, I didn't think that. Nick says you can sue as soon as the taking happens. We don't have to worry about the compensation process playing out. Maybe it doesn't answer what exactly is a taking, but there's certainly been a lot of precedent since that time. Right. And I just, I don't want to get too lost in the weeds here because it does remain entirely speculative and conclusory that the value for property will even go down. And I know your Honor understands that, but I think that was the point that Judge Edmonds relied on  And they didn't even plead anything in terms of facts to support the conclusory allegation. But your position then is when, if she has a claim for a taking, when would that claim arise? When would it be ripe? Well, there would have to be a final decision on the act that's supposedly, allegedly going to reduce, that's going to damage her property. That hasn't happened. And number two, there has to be a showing that there will be an injury to her that constitutes a taking. There have to be facts that support an inference of that at least. So if the governments had decided, have decided specifically, we are awarding a contract, we will demolish the dam tomorrow. And if she had some kind of a study that she referred to in her complaint that said that removal of the dam will cause A, B, and C harms to her property, would that then be a ripe action? Would the case that she files where she's making a takings claim be ripe and she would have standing under that hypo? I think so, if I'm wrong about concrete pipe. I think that sounds right to me, Your Honor. Well, it seems like she's pled harm to herself and the properties in the complaint. It's being described as a takings claim presently, but if discovery indicates there should, the taking should be described in another way, it would seem that she would have an opportunity to amend the complaint. But in terms of there being harm to the plaintiff and the property, it seems like there's enough in the complaint for that. They're entirely conclusory allegations, though. They're allegations to Judge Moore's question earlier. It's entirely speculative as to whether the removal of the dam would cause any of these things. And she didn't allege facts that allow for an inference that this is just going to happen. She just said the value of my property is going to go down. Well, how do we know? And she said there's going to be damage to the local ecosystem. Well, how do we know? There's no factual support for anything. I mean, you've got apparently a fair amount of information. You say you've got these environmental studies and things that you won't divulge. So, I mean, if she could, the potential harm being alleged is certainly fairly concrete. And it appears to be pretty imminent. This newspaper article that came out, which I don't think you've denied the truth of, saying that the township and the county have agreed and approved a plan to remove the dam was about the business of doing so, which was filed after the complaint. So maybe the complaint needs to be tidied up or amended or rewritten. But just in terms of standing, I don't see a problem with that. The only thing, I know my time is up, but I feel like I must have a poor answer to your earlier question, Judge Clay. I'm not aware of any information that my client has that they have not shared with the plaintiff. Well, you said earlier in your argument that there were environmental assessments and you didn't know what they said and they hadn't been made public and not been turned over to the plaintiff. You did say that. Then I misspoke. I was referring to the environmental studies that are referenced in her own complaint and I think A, B, C, D, E, F, G. Well, no, you said your side of the courtroom had such things. That's what you said. I misspoke. Then I apologize. I misspoke. I'm not aware of anything like that. You asked if there were environmental studies and I thought there were based on the briefing in the case. I thought that there had been studies that showed that there were these several options and the option that was recommended and that is potentially going to be approved is the removal of the dam. So I'm sorry if I was inaccurate earlier. Thank you. Good morning, Your Honors. Dan Plummer on behalf of the remaining defendants. I'll be very brief in light of the time that remains. I just wanted to clarify a couple of the concerns that were articulated from the bench. There is an environmental study as counsel indicated. It has fully been made available to the public as part of the public hearing process that preceded this dam, this project related to the dam. Plaintiff in fact showed up at these public hearings and protested the choice that was on the table of removing the dam. So I just want to make sure that no one thinks that either of the governmental defendants are hiding the ball in any way. This was part of a public approval process as well as one choice from very many choices that were very, very costly and difficult to consider. So has the choice been made to demolish the dam? The choice has been made to move forward to remove the dam, yes. So why isn't this ripe then? I believe because at the time the complaint was filed that was not a final decision at that time. So on ripeness, we cannot look at subsequent events. We have to look only at the time that the complaint was filed. Is that correct? I'm not as clear on that as I am with respect to the standing portion of it. I would defer to what we briefed and concur in what my brother counsel had submitted on the briefs as well as the court below. But doesn't it seem silly for us to say we're going to throw this case out if in fact the governments have decided to demolish the dam? Why couldn't she amend her complaint to say, oh, at oral argument, counsel said that the decision had been made to demolish the dam and therefore I request leave to amend the complaint. And I'm comfortable assuming that fact, saying I see my time is up if it's okay. I mean, thank you. So I'm comfortable with making the assumption that the decision has been made to remove the dam, albeit the dam has not been removed. And until that occurs, we can't be certain as to the damages that plaintiff will suffer, if any. I suppose there's even a possibility that her property value could increase. At this time, her claims are speculative in nature. And that's essentially my answer. So it really goes to the concept of what is a takings claim, that there has to be a taking of property that then the question can be raised, what is the compensation for the taking of property? But that a federal lawsuit raising a takings claim is not the appropriate vehicle for obtaining injunctive relief to stop a taking. That is my understanding as this case is currently postured, yes. So what's the best case for saying that this is a misuse of takings jurisprudence and that plaintiffs who want to stop the demolition of a dam because of their fear as to what it's going to do to their property adjacent to the dam have to wait until the dam is demolished and people see, well, oh yeah, you lost the entire value of your property and it was worth $100,000 before the dam was demolished. And so that's what you get. Certainly. So the case would be, number one, an action for that $100,000 perhaps. In addition to that, if there is no way to do anything short of keeping the dam, the request for relief, not saying it would be appreciated or granted, but the request for relief would then have to be put it back or put back some version of what occurred to make the plaintiff whole. Yeah, but as a society, we wouldn't want to have one homeowner say, my land was priceless to me and therefore you have to put back a dam. We'd want the courts to be able to say, oh yes, if you do demolish the dam, her property is priceless and so therefore we will not allow you to demolish the dam. In advance, we would want the court to be able to say, she's got this claim that it's a historic property where some treaty was signed and we have to keep it exactly as it is. Certainly, but in this case, that does not exist. There's no other basis to prevent what the plaintiff is asking to do because to date and potentially in the future, no damage might occur to her. Let me ask you this. Since you made the decision to go forward with the dam removal, why wouldn't you sue to take the plaintiff's property pursuant to eminent domain under state law? Then the plaintiff would have the protection of the eminent domain procedure and could protect her rights in that process, but you're not doing that. Why wouldn't you go that route? Why not start with the whole concept of eminent domain take that property compensator as needed? Well, assuming that you qualified under the statute, I'm not saying what would happen, but there is that availability and you've not done that. You're just going to let her suffer the consequences of the dam removal, whereas you could have proceeded legally in a more orderly manner by going through the eminent domain process. And respectfully, Your Honor, that assumes of course that her property will in fact be damaged more so than any other member of the general public. Well, yeah, but that's why the eminent domain law is there to make those kinds of determinations. That's exactly why that statute exists. That's correct, and my assumption there would be that that remedy on the front end was either deemed to be unnecessary or improper because the true assessment is whether it's practical or feasible to continue to maintain a dam at this cost and this expense to the public. That's why the whole public... That's why you would have a strong argument if you filed the eminent domain action. That's why I don't understand why you're proceeding in the way that you're doing. I think it's because there's the belief that it will not detrimentally impact her property. And you don't want that property, actually. You don't want to seize that property. Correct, because it would not be necessary to the project as it currently is postured. Thank you. Can I ask, I'm sorry, but when is the dam... Sounds like the wheels are in motion, but when is the dam supposed to come down? Is there a set date for that? Not a set date. It's anticipated that perhaps by next spring after the thaw, the project could begin. Okay, and are there variables that could either push that back or completely derail the taking down of the dam? So given that my background is not in the civil engineering world, I suppose, I don't want to say... Well, even funding variables or political leadership changes or other things? Short of environmental or engineering type of changes, unlikely. Being completely candid with you, unlikely. Thank you. Thank you. I'm glad I took this ride to Cleveland. I just found out that they are admitting they're going forward with this dam removal and the draining of the lake. I'd like to point out that it's not just a dam removal. Once that dam is removed, a 5.5-acre, 200-year-old lake will be drained. It will not be taken back to its natural form. It'll be unnatural. The 14-acre wildlife wetlands will be gone. It's not just a dam. Yeah, but you brought this action as a taking claim. I mean, I've been looking at your complaint during the course of this to refresh my recollection, and it entirely counts having to do with taking of your property. And so the fact of whether things will happen to the lake doesn't seem part of the takings of your property. How am I wrong in understanding that? The recent decision by the Supreme Court in Cedar Point Nursery versus Hassett was decided March, excuse me, June 23, 2021. Justice Roberts talks about using the taking clause now not as the red-haired stepchild that we put in the corner, but has a constitutional means to protect something that's very important to the people of the United States, and that would be our land. Under the Cedar Point Nursery case, a 100% physical taking of land is not necessary. What is necessary is that someone is deprived, and that goes also to standing, as Your Honor pointed out in the beginning of this case. What about standing? It was discussed in both the Cedar Point case and Taub versus Kentucky. Was Cedar Point a physical taking or a regulatory taking? What it was was a case where growers had workers that the unions were seeking to unionize. The California government stated that the union people could go on the grower's property for the purpose of... Yeah, I was just going to try to remember if that was considered a physical taking. I mean, you have two theories, right? You have a regulatory taking and a physical taking. I can't remember which one's Cedar Point. Well, interestingly enough, Judge Roberts said this was an actual physical taking. Even though it was temporary, it wasn't a permanent... I sort of understand your physical taking theory. I think that there's more water on your land, there's less water on your land. But the regulatory taking theory, I don't really understand. I think of a regulatory taking as like a zoning. You own property that you want to use for commercial purposes, and then the township rezones it, and this is only for residential, and you've been denied some value, you think, or says you can't build anything on the property and plans to do that. But that's not really your... I don't really quite understand your regulatory taking theory. My regulatory taking, the analogy I could make, it's very old, it's not happening, so I don't want to mislead the court. But it's the analogy of having the pig farm put right next to your home. Okay. Sometimes it's a nuisance. It's exactly, it's a nuisance. Well, that's a different theory. I think of that as a nuisance, but you... And additionally, outside of the smell of the pig farm, there's also all the traffic. That's another thing that was plugged in our case as well. Privacy, quiet... The traffic has to be on your property itself. And then we get to the riparian rights. These are all things that weren't discovered, that were not explored. Discovery, the riparian rights in Michigan are specific. They're arguing against us having any rights whatsoever to anything out there we're saying that we do. That's all for discovery. I agree with that. That is... That's also, there's a, I mean, those things, there's a monetary value for those things, if you can show it, and then if you are denied just... I think Nick says you can sue as soon as there's an actual taking, but the test is whether there's just compensation. Correct. And if there isn't just compensation, then we do the anticipatory remedy discussion of an injunction. Our injunction that we requested is preliminary, simply so we could take a... I don't think you get... You don't get an injunction for money... You don't get an injunction when there's money damages available. When you can't have... When you cannot be compensated with money, when there is nothing else that can compensate you, you would request... Well, we would request injunction relief. Yeah, I guess this is not the kind of case where you just have been totally deprived of use of the property. You still have the property. Maybe there's better fishing or worse fishing. There's more water flow, there's less water flow, but they're typically compensable by money damages. And that's something it could be, and I think something that could be explored in discovery, but we were never allowed that chance to do that. You could be completely right in that respect, or it could be that this is something that should be historically protected as well. I can't say, and that's not speculation. That's why we went to court. We want to explore this. If this would have got before Springfield Township, County of Oakland for a vote, we wouldn't be here now, but nobody is voting. At every meeting that has been had up until now, the people who have showed up have been against this. Thank you. Your red light is on. We thank you and the other counsel for your argument, and the case will be submitted. Would the clerk call the next case, please?